# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARISOL VIVANCO, individually and as successor in interest to SOLTON VIVANCO GONZALEZ**<br><br>Plaintiff,<br><br>v.<br><br>**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,** *et al.*,<br><br>Defendants. | 1:17-cv-00434-LJO-BAM<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS (Doc. 15)** |

## I. INTRODUCTION

This case concerns Plaintiff Marisol Vivanco's claims under 42 U.S.C. §§ 1983 ("§ 1983") and California Code of Civil Procedure §§ 845.6 and 377.60 related to the death of Solton Vivanco Gonzalez while in custody of the California Department of Corrections and Rehabilitation ("CDCR"). The Actions was removed to federal court on March 23, 2017. Doc. 1. The Court dismissed Plaintiff's complaint on June 13, 2017, and Plaintiff filed a first amended complaint ("FAC") on July 12, 2017. Docs. 9, 11. On August 15, 2017, Defendants CDCR and Warden Scott Frauenheim (collectively "Defendants") filed a motion to dismiss the FAC. Doc. 15. On August 30, 2017, Plaintiff filed an opposition. Doc. 16. On September 5, 2017, Defendants filed a reply. Doc. 17. For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## II. FACTUAL BACKGROUND

The following facts are drawn from the complaint and filings in this matter, and are accepted as true only for the purpose of this motion to dismiss. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

1

2009). Plaintiff is the mother and successor in interest of Mr. Gonzalez, who died on January 28, 2016, while incarcerated at PVSP. Doc. 11 at ¶¶ 1, 4. Mr. Gonzalez suffered from mental health issues including severe depression. *Id*. at ¶ 18. He had been prescribed psychiatric medication in the past, but was not taking any psychiatric medication at the time of his death. *Id*. at ¶¶ 18, 26. Mr. Gonzalez was housed in Delta Wing, an administrative segregation unit, due to a prison instructor's accusation of inappropriate sexual conduct. *Id*. at ¶¶ 19-24. Delta Wing staff allegedly called Mr. Gonzalez a pervert and other insulting names, and forced him to wear a strait jacket which staff call a "pervert jacket," "pervert dress," and "pervert skirt." *Id*. at ¶ 25. PVSP staff also covered Mr. Gonzalez's cell window and deprived him of hygiene products and reading and writing materials, and of the use of his radio. *Id*. at ¶ 28. As a result, Mr. Gonzalez's morale declined, he became depressed, and he refused to exit his cell. *Id*. at ¶ 27.

Delta Wing regulations mandated visual welfare checks of inmates every 30 minutes. *Id*. at ¶ 29. The welfare check procedure required a staff member to look in on the inmate and confirm the check using a handheld electronic device at a door sensor. *Id*. When actually conducting the checks, however, prison staff would electronically confirm the welfare checks without observing the inmate. *Id*. Mental health staff similarly would regularly fail to complete mandatory morning and evening well-being checks. *Id*. at ¶ 30. On one occasion, a psychiatric technician laughed at him Mr. Gonzalez after seeing him write "Life without company, finally free." *Id*. at ¶ 31.

On the day that Mr. Gonzalez committed suicide, Officer Kwity saw Mr. Gonzalez braiding his sheets during a welfare check. *Id*. at ¶ 32. Officer Kwity asked Mr. Gonzalez what he was doing, and Mr. Gonzalez said "you'll see." *Id*. Officer Kwity announced "we got a faker," and continued his rounds without removing the sheets or alerting any other staff member. *Id*. When Officer Farra conducted the next welfare check, an inmate told the officer that he had heard a struggle in Mr. Gonzalez's cell. *Id*. at ¶ 33. When Officer Farra looked into Mr. Gonzalez's cell, he saw Mr. Gonzalez hanging from his sheet. *Id*. CDCR determined that Mr. Gonzalez's cause of death was suicide by hanging. *Id*. at ¶ 34.

In April of 2014, well before Mr. Gonzalez was placed in Delta Wing but while Mr. Frauenheim was the acting Warden at PVSP, U.S. District Court Judge Lawrence Karlton found that placing seriously mentally ill inmates in segregated housing caused serious psychological harm, including increased risk of suicide. *Id*. at ¶¶ 35, 36. Judge Karlton ordered CDCR to establish a plan to keep mentally ill inmates out of segregated housing when there is a substantial risk of worsening mental illness or prompting suicide attempts. *Id*. at ¶ 35. Judge Karlton also ruled that inmates with mental illnesses could not be placed secured housing units unless prison officials could demonstrate that isolation would not further harm the inmates' mental states. *Id*.

Plaintiff brings claims against the CDCR, Mr. Frauenheim in his individual capacity, and unnamed Doe parties. Plaintiff's first claim alleges Eighth Amendment deliberate indifference by Mr. Frauenheim and Does to Mr. Gonzalez's serious medical needs, health, and safety. Doc. 11 at 11-13. Plaintiff's second claim asserts a *Monell* liability claim against Mr. Frauenheim and some Does. Doc. 11 at 13-15. Plaintiff's third claim alleges that Defendant's actions deprived Plaintiff of her parent-child relationship with Mr. Gonzalez in violation of Plaintiff's Fourteenth Amendment right to substantive due process. Doc. 11 at 16-18. Plaintiff's fourth claim alleges that CDCR and Does are liable for Mr. Gonzalez's wrongful death under California Government Code § 845.6 and California Code of Civil Procedure § 377.60 *et seq*. Doc. 11 at 18-20. Finally, Plaintiff's fifth claim asserts that Mr. Frauenheim and unnamed defendants failed to adequately supervise PVSP employees. Doc. 11 at 20-21.

### III. **STANDARD OF DECISION**

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) challenges the legal sufficiency of the opposing party's pleadings. Dismissal of an action under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the pleading party.

3

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The inquiry is generally limited to the allegations made in the complaint. *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To overcome a Rule 12(b)(6) challenge, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim is one which provides more than "a sheer possibility that a defendant has acted unlawfully." *Id*. A claim which is possible, but which is not supported by enough facts to "nudge [it] across the line from conceivable to plausible . . . must be dismissed." *Twombly*, 550 U.S. at 570.

A complaint facing a Rule 12(b)(6) challenge "does not need detailed factual allegations [but] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (internal citations omitted). In essence, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id*. at 562. To the extent that any defect in the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend, unless the pleading "could not possibly be cured by the allegation of other facts. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

When a court grants a motion to dismiss, it must also decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Forman v. Davis*, 371 U.S. 178, 182 (1962). Of these

factors, "the consideration of prejudice to the opposing party . . . carries the greatest weight." *Eminence Captial, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Dismissal without leave to amend is improper unless it is clear that "the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991).

## IV. <u>ANALYSIS</u>

Defendant's motion seeks dismissal of Plaintiff's § 1983 claims against Mr. Frauenheim, Plaintiff's *Monell* claim, and Plaintiff's request for injunctive relief. Defendant's motion to dismiss does not address Plaintiff's cause of action against CDCR, or Plaintiff's claims against the Doe Defendants.

### A. Deliberate Indifference Claim Against Mr. Frauenheim in His Individual Capacity

Section 1983 provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The statute explicitly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Services*, 436 U.S. 658, 692-95 (1978). The defendants' actions must be both an actual and proximate cause of the plaintiff's injuries. *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior*, and when a named defendant holds a supervisory position a causal link between him or her and the alleged misconduct must be specifically alleged. *See Fayle v.*

5

*Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants personally participated in the deprivation of federal rights, knew of the violations and failed to act to prevent them, or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987)).

Under the Eighth Amendment, the government has an obligation to provide medical care to those who are incarcerated. *See Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). "In order to violate the Eighth Amendment proscription against cruel and unusual punishment, there must be a 'deliberate indifference to serious medical needs of prisoners.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). *Lopez* takes a two-prong approach to evaluating whether medical care, or lack thereof, rises to the level of "deliberate indifference." First, a Court must examine whether the plaintiff's medical needs were serious. *See id.* Second, a Court must determine whether "officials intentionally interfered with [the plaintiff's] medical treatment." *Id.* at 1132. "The indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

Defendants argue that Plaintiff's FAC fails to allege specific facts to establish a linkage between Mr. Frauenheim's actions and the alleged deprivations. Doc. 15 at 9. Specifically, Defendants contend that Plaintiff did not allege Mr. Frauenheim was involved with any aspect of Mr. Gonzalez's mental health care, or that Mr. Frauenheim was directly involved with Mr. Gonzalez's placement in D-Wing or treatment by D-Wing staff. *Id.* Additionally, Defendants contend that Plaintiff's factual recitations merely state the elements of her claims rather than specifically stating any facts establishing Mr. Frauenheim's knowledge that Mr. Gonzalez had a mental health condition, was not receiving mental

6

health treatment, was being ridiculed and isolated by staff, or that staff was improperly trained in the care of mentally ill inmates and not properly supervising Mr. Gonzalez. Doc. 17 at 2.

In response, Plaintiff contends that her FAC does state a cause of action under the Eighth Amendment against Mr. Frauenheim for deliberate indifference and failure to supervise. Doc. 16 at 10. Plaintiff points to her allegations that Mr. Frauenheim failed to implement the policy changes ordered by Judge Karlton, was aware that inmates with mental illnesses, including Plaintiff, were placed in segregated housing without a demonstration that such housing would cause a further harm to Plaintiff's mental state, and disregarded the increased risk of suicide created thereby. Doc. 16 at 10-11.

Plaintiff's complaint has alleged sufficiently definite facts to survive Defendant's motion to dismiss. The facts alleged in the FAC, taken as true, indicate that, following Judge Karlton's order, Mr. Frauenheim and PVSP staff failed to implement the policy changes ordered by Judge Karlton, and that lack was a "moving force" behind the alleged Eighth Amendment deliberate indifference. The alleged failure to establish a conforming plan or policy and to evaluate Mr. Gonzalez despite his history of mental illness constitutes a causal link between Mr. Frauenheim and the harm alleged. Accordingly, Defendant's motion to dismiss is DENIED.

**B.**     **Fourteenth Amendment Substantive Due Process Claim**

Defendants did not specifically address Plaintiff's claim that the death of Mr. Gonzalez deprived her of her parent-child relationship in violation of her Fourteenth Amendment substantive due process rights. In their reply, Defendants clarified that they intended their motion to dismiss to encompass all of Plaintiff's § 1983 claims, including the claim premised on a Fourteenth Amendment violation. Doc. 17 at 2. Defendants explained that, in challenging the sufficiency of Plaintiff's allegations supporting her deliberate indifference claim, they challenged the same allegations as they pertain to the substantive due process claim. *Id*.

The Court has concluded that Plaintiff's FAC alleges sufficient facts to support her deliberate indifference claim. Defendants' challenge to Plaintiff's substantive due process claim is solely based on

7

the sufficiency of these facts. Since Defendants have not offered any other argument why Plaintiff's FAC does not state a substantive due process claim, Defendant's motion to dismiss is DENIED as to that claim.

**C.     *Monell* and Injunctive Relief Claims**

In her opposition, Plaintiff agreed that the FAC did not state a viable claim based on a *Monell* violation or for injunctive relief, and stipulated to dismissal of those claims without prejudice. Doc. 16 at 11. Defendants argue that dismissal should be with prejudice since Plaintiff cannot amend her complaint to state viable claims. Based on the Court's review of the papers, it appears that amendment as to the injunctive relief claim would be futile, as Plaintiff lacks standing to bring that claim. There is no indication that any harmful conduct was directed towards Plaintiff herself, there is no indication that there is any actual and immediate threat to Plaintiff, and there is no risk of future harm towards Mr. Gonzalez. Since amendment would be futile, Plaintiff's request for injunctive relief is dismissed without leave to amend.

As to the *Monell* damages claim, it also appears that amendment would be futile. *Monell* permits a § 1983 claim to be brought against a municipality where the municipality itself causes a constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). While a *Monell* claim may be brought nominally against an employee of the municipality, the true party in interest is the government entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). However, Eleventh Amendment immunity bars actions for damages against state actors acting in their official capacities.[1] *Graham*, 473 U.S. at 169; *Brown v. Cal. Dept. of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009). Mr. Frauenheim and the Doe defendants are employees of the State of California, and the allegations in Plaintiff's FAC indicate that they were acting in the course and scope of their employment. The true party in interest in Plaintiff's

---

[1] Plaintiff characterizes the claim as being brought against Mr. Frauenheim in his individual capacity, perhaps because the Court previously dismissed with prejudice Plaintiff's claims against Mr. Frauenheim in his official capacity. *See* Doc. 9 at 5. However, a *Monell* claim may only be brought against a municipality, not an individual. *Guillory v. Orange County*, 731 F.2d 1379, 1382 (9th Cir. 1984) ("*Monell* does not concern liability of individuals acting under color of state law.").

8

purported *Monell* claim is therefore the State of California, and amendment would be futile. Accordingly, Plaintiff will not be granted leave to amend her *Monell* claim.

### V. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff's § 1983 *Monell* claim against Mr. Frauenheim and request for injunctive relief are dismissed without leave to amend. Plaintiff's deliberate indifference and substantive due process claims against Mr. Frauenheim and Doe Defendants, and her state law claim against CDCR and Doe Defendants, remain.

IT IS SO ORDERED.

Dated: **October 16, 2017**  /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE