# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISOL VIVANCO, Individually and as Successor in Interest to SOLTON VIVANCO GONZALEZ,<br>    Plaintiff,<br>v.<br>CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, et al.,<br>    Defendants. | Case No.: 1:17-cv-00434-BAM<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. No. 35) |

Currently before the Court is Defendants California Department of Corrections ("CDCR") and Scott Frauenheim's ("Warden Frauenheim" and collectively "Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed on March 1, 2019. (Doc. No. 35.) Plaintiff Marisol Vivanco, Individually and as Successor in Interest to Solton Vivanco Gonzalez, ("Plaintiff") filed her opposition on April 12, 2019. (Doc. No. 36.) Defendants filed a reply on April 26, 2019. (Doc. No. 43.)

On June 7, 2019, a hearing on the motion was held before the Honorable Barbara A. McAuliffe, United States Magistrate Judge.[1] Counsel Jesse Ortiz appeared by telephone on behalf of Plaintiff. Counsel Preeti Bajwa and Yevgeniy Parkman appeared in person on behalf of Defendants. (Doc. No. 45.) Having considered the record and the parties' briefing and oral arguments, the Court grants Defendants' motion for summary judgment.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge for all purposes pursuant to 28 U.S.C.§ 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305. (Doc. Nos. 27, 28.)

1

## I. BACKGROUND

This action concerns Plaintiff's claims related to the death of her son, decedent Solton Vivanco Gonzalez ("Mr. Gonzalez"), who committed suicide by hanging while he was incarcerated at Pleasant Valley State Prison ("PVSP") and in the custody of CDCR. (*See* Doc. No. 1.) Plaintiff originally filed her complaint on December 20, 2016, in the Superior Court of California for the County of Fresno, asserting claims against CDCR, Warden Frauenheim, and Does 1-50 for violations of the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and for wrongful death under and California Code of Civil Procedure § 377.60. (Doc. No. 1 at Ex. A.) Defendants removed the action to this Court on March 23, 2017. (Doc. No. 1.) Following the Court's orders on two motions to dismiss filed by Defendants, the action proceeded on Plaintiff's Eighth Amendment deliberate indifference and failure to supervise claims, Plaintiff's Fourteenth Amendment substantive due process claims against Warden Frauenheim in his individual capacity and various Doe defendants, and Plaintiff's state law claim for wrongful death against CDCR and various Doe defendants. (Doc. Nos. 2, 4, 9, 11, 21.)

Plaintiff's operative complaint alleged that PVSP staff ridiculed and mistreated Mr. Gonzalez, a mentally ill inmate, while he was housed in a short-term restricted housing unit, failed to adequately monitor his welfare, did not intervene when observing Mr. Gonzalez braiding his sheet shortly before he hung himself, did not provide him with psychiatric medication, and laughed at his suicidal ideations. (Doc. No. 11 at ¶¶ 17-34.) Plaintiff further alleged that Warden Frauenheim failed to implement policies regarding the placement of mentally ill inmates in short-term restricted housing as required by *Coleman v. Newsom*, Case No. 2:90-cv-00520-KJM-DAD ("*Coleman*"). (*Id.* at ¶¶ 35-39.)

## II. UNDISPUTED MATERIAL FACTS

Unless otherwise noted, the facts set forth below are uncontroverted.[2] As necessary, the Court

---

[2] In determining which facts are undisputed, the Court relies on Defendants' moving papers (Doc. No. 35) and Statement of Undisputed Facts ("SUF") (Doc. No. 35-2) and the evidence cited therein, as well as the evidence cited in Plaintiff's opposition and supporting papers, including Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. No. 39) and Statement of Disputed Facts (Doc. No. 38), and from other parts of the record that the Court has deemed undisputed after considering all of the parties' arguments and objections. The Court notes that Plaintiff disputes SUF Nos. 2, 4, and 8. However, Plaintiff attempts to dispute these facts on grounds that do not actually raise a genuine issue as Plaintiff only cites to the totality of 325 pages of Mr. Gonzalez' medical records from CDCR without directing the Court to any particular portion of the record. Likewise, Plaintiff's citation to the evidence in support of Disputed Fact Nos. 25-27 cite generally to the entirety of Mr. Gonzalez' medical records. The parties bear the burden of supporting their motions

2

discusses further factual details in its analysis. The parties' legal conclusions, arguments, and assertions are not considered facts.

On August 29, 2014, the Court in *Coleman* issued an order authorizing mentally ill inmates to be housed in short-term restricted housing units. (SUF No. 1.) As a result of *Coleman,* PVSP implemented policies and procedures regulating the placement and retention of mentally ill inmates in short-term restricted housing units. (SUF Nos. 2, 3.)

Mr. Gonzalez, an inmate in the custody of CDCR, was receiving mental health services for depression while incarcerated at PVSP and reported that he first began taking medication for depression at age sixteen. (Decl. of Jesse Ortiz, Ex. A at AG 364-369, 373, 407, 413-428.) A mental health evaluation dated June 18, 2015, performed while Mr. Gonzalez was housed at Deuel Vocational Institute prior to being transferred to PVSP, noted that Mr. Gonzalez reported a "history of sleep challenges and depression without medication." (*Id.* at AG 404-414.) A suicide risk evaluation dated September 28, 2015, indicated that Mr. Gonzalez had a history of chronic mental illness and suicide attempts in which he drank bleach in 2012 and attempted to jump in front of a truck in 2014. (*Id.* at AG 399-401.)

Mr. Gonzalez was moved to the short-term restricted housing unit on January 8, 2016, based on an indecent exposure allegation. (SUF No. 3.) On January 14, 2016, Warden Frauenheim chaired a classification committee, which included CDCR psychologists Drs. Lee and Dehnavifar, and which was tasked with determining Mr. Gonzalez' continued retention in the short-term restricted housing unit. (SUF No. 5.) Drs. Lee and Dehnavifar evaluated Mr. Gonzalez' mental health before this committee hearing and determined that retaining him in the short-term restricted housing unit did not place him at substantial risk of serious harm. (SUF No. 6.) Based on these evaluations and opinions, the committee voted to retain Mr. Gonzalez in the short-term restricted housing unit. (SUF No. 7.)

On January 13, 2016, while housed in the short-term restricted housing unit in PVSP, Mr.

---

and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration. *Carmen v. San Francisco Unified School Dist.,* 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."). The Court will not undertake to scour the record for triable issues of fact. *Simmons v. Navajo County, Arizona,* 609 F.3d 1011, 1017 (9th Cir. 2010). However, when Plaintiff made a specific citation to the evidence, the Court reviewed those records.

Gonzalez met with CDCR mental health staff and "asked about taking psych meds." (Decl. of Jesse Ortiz, Ex. A at AG 426.) Mr. Gonzalez received mental health services from Dr. Lee but stated during his session that "he would be fine without [medications] for the time being" and was not prescribed any psychiatric medications. On January 19, 2016, Mr. Gonzalez reported some increase in his depression since being placed in short-term restricted housing. (*Id.* at AG 421.) On January 20, 2016, CDCR psychiatrist Dr. Kuo discussed psychiatric medications with Mr. Gonzalez and noted that he was "[r]elatively stable" without them. (*Id.* at AG420.) The same day, CDCR staff described Mr. Gonzalez' status as being managed well, and Mr. Gonzalez further reported feeling better without medication. (*Id.* at AG 355.) Mr. Gonzalez denied experiencing any significant mental health concerns or symptoms and stated he felt he was adjusting well to short-term restricted housing. (*Id.*)

Dr. Lee performed a cell front check on Mr. Gonzalez at 1:00 p.m. on January 26, 2016. (Decl. of Jesse Ortiz, Ex. A at AG 415.) Mr. Gonzalez reported feeling depressed and that he likely would not go to group therapy and further expressed interest in medication. (*Id.*) Mr. Gonzalez appeared to be experiencing increased depressive symptoms, was sleeping at odd hours, and had stopped coming out of his cell for therapy sessions. (*Id.*) Dr. Lee's notes further indicate that Mr. Gonzalez was not prescribed medication at that time but agreed to meet out of cell to discuss medication options the following week. (*Id.*) Mr. Gonzalez denied any other significant mental health concerns or symptoms and "did not exhibit sign[s] of any thoughts or behaviors related to harming [him]self or others" at the time he and Dr. Lee met. (*Id.*) Mr. Gonzalez was described as being cooperative, made good eye contact, responded willingly and appropriately to questions, was alert, oriented, and smiled at appropriate times, his emotional presentation was congruent with context and theme, he exhibited good concentration skills, and gave no signs of delusional activity, ideas of reference, or hallucinations. (*Id.*)

Mr. Gonzalez was found hanging in his cell at approximately 7:35 p.m. on January 27, 2016. (Decl. of Jesse Ortiz, Ex. A at AG 190-191.) He suffered anoxic brain injury as a result of the hanging and died from his injuries on January 29, 2016. (*Id.*)

///
///
///

### III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.* Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 3 at 323. The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken

as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

## IV. DISCUSSION[3]

### A. Defendants' Evidentiary Objections

On reply, Defendants submitted numerous objections to the evidence cited in Plaintiff's Statement of Disputed Facts. (Doc. Nos. 38, 43 at 11.) Specifically, Defendants object to the evidence cited in support of Plaintiff's Disputed Fact Nos. 2, 6, 12-13, 17-19, and 21-27 on the grounds that they "are mistaken and therefore do not support the facts stated" and/or "are not supported by the evidence cited." (Doc. No. 43 at 11-12.) Defendants further object to Plaintiff's Disputed Fact No. 24 on the ground that it constitutes an impermissible legal conclusion. (*Id.* at 12.) However, Defendants' objections are duplicative of the summary judgment standard itself. *See Burch v. Regents of Univ. of Cal.,* 433 F.Supp.2d 1110, 1119–20 (E.D. Cal. 2006) ("[O]bjections to evidence on grounds that the evidence is irrelevant, speculative, argumentative, or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself."); *Connor v. California*, 2013 WL 321703, at *1 (E.D. Cal. Jan. 28, 2013); *Carden v. Chenega Sec. & Protection Services, LLC,* 2011 WL 1807384, at *3-4 (E.D. Cal. May 10, 2011); *Arias v. McHugh,* 2010 WL 2511175, at *5-6 (E.D. Cal. June 17, 2010); *Tracchia v. Tilton,* 2009 WL 3055222, at *3 (E.D. Cal. Sept. 21, 2009). These objections are overruled.

---

[3] The Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court has thoroughly reviewed and considered the evidence deemed admissible and material.

Defendants further object to Plaintiff's Disputed Fact No. 7 because "Plaintiff's assertion that the book found in [Mr.] Gonzalez's cell was 'about suicide' lacks foundation and is hearsay." (Doc. No. 43 at 11.) The Court, however, has not relied on Plaintiff's Disputed Fact No. 7 in ruling on the motion. Whether not Mr. Gonzalez' suicide note was placed under a book about suicide is not a material fact.

### B. Section 1983 Claims Against Warden Frauenheim

Plaintiff's claims against Warden Frauenheim arise under the Civil Rights Act, 42 U.S.C. § 1983, *et seq.*, which provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 ... creates a cause of action for violations of the federal Constitution and laws." *Sweaney v. Ada County, Idaho,* 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). Liability under section 1983 exists where a defendant "acting under the color of law" has deprived the plaintiff "of a right secured by the Constitution or laws of the United States." *Jensen v. Lane County,* 222 F.3d 570, 574 (9th Cir. 2000). "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

To be held liable under Section 1983, each defendant must have personally participated in the deprivation of the plaintiff's rights. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002). The statute requires an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Department of Social Services,* 436 U.S. 658 (1978); *Rizzo v. Goode,* 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir. 1978).

### 1. Eighth Amendment—Deliberate Indifference

Plaintiff asserts a Section 1983 claim against Warden Frauenheim for deliberate indifference to Mr. Gonzalez' serious medical needs under the Eighth Amendment. (Doc. No. 11 at ¶¶ 40-49.) A claim of inadequate medical care does not violate the Eighth Amendment's proscription against cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97 (1976); *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006). In the Ninth Circuit, the test for deliberate indifference consists of two parts; an objective and a subjective prong. *Jett,* 439 F.3d at 1096; *Kunkel v. Dill,* 2012 WL 1898900, at *7 (E.D. Cal. May 23, 2012). First, under the objective prong, the alleged deprivation must be "sufficiently serious[,]" meaning a plaintiff must show a serious medical need by demonstrating that failure to treat the prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)); *Jett,* 439 F.3d at 1096; *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1992), overruled in part on other grounds by *WMX Technologies, Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Second, the prison official must subjectively act with a "sufficiently culpable state of mind" and "[t]he plaintiff must show the defendant's response to the need was deliberately indifferent." *Farmer,* 511 U.S. at 837; *Jett,* 439 F.3d at 1096. A prison official is "deliberately indifferent" if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer,* 511 U.S. at 837. In other words, the second prong is satisfied by the plaintiff showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett,* 439 F.3d at 1096.

"Deliberate indifference is a high legal standard." *Toguchi v. Chung,* 391 F.3d 1051, 1060 (9th Cir.2004). It requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer,* 511 U.S. at 835 (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. Prison officials "must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" but 'must also draw the inference.'" *Toguchi,* 391 F.3d at 1057 (quoting *Farmer,* 511 U.S. at 837). This subjective approach

focuses solely on the defendant's actual mental attitude, and "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Id.* (quoting *McGuckin,* 974 F.2d at 1059). Thus, even if a prison official "'should have been aware of the risk, but was not, then [he or she] has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nev.,* 290 F.3d 1175, 1188 (9th Cir. 2002)).

Warden Frauenheim contends that Plaintiff's deliberate indifference claim fails because there is no evidence that Mr. Gonzalez was at a substantial risk of serious harm while he was in short-term restricted housing or that Warden Frauenheim was deliberately indifferent to any substantial risk of serious harm. (Doc. No. 35-1 at 7-10.) In opposition, Plaintiff maintains that Mr. Gonzalez' depression was a serious medical need and Warden Frauenheim was deliberately indifferent to that serious medical need because CDCR staff failed to see Mr. Gonzalez on January 27, 2016, after being informed that his depression was worsening and knew of Mr. Gonzalez' history of suicide attempts. (Doc. No. 36 at 10.) Additionally, Plaintiff contends that Warden Frauenheim failed to require compliance with the *Coleman* order. (*Id.* at 10-11.) Finally, Plaintiff argues that Warden Frauenheim's participation as chair of a January 14, 2016 classification committee directing CDCR staff to retain Mr. Gonzalez in short-term restricted housing creates a triable issue of fact as to whether Warden Frauenheim "was a sufficient causal connection to the constitutional violation." (*Id.* at 11.) On reply, Warden Frauenheim notes that Plaintiff's arguments raise new theories of liability for the first time in her opposition and those new theories fail because they are not supported by evidence. (Doc. No. 43 at 3-4.)

As noted above, a claim for deliberate indifference in violation of the Eighth Amendment requires an objective risk, meaning Plaintiff must present evidence of a serious medical need. "A heightened suicide risk or an attempted suicide is a serious medical need." *Conn v. City of Reno,* 591 F.3d 1081, 1095 (9th Cir. 2010), vacated 563 U.S. 915 (2011), opinion reinstated in relevant part, 658 F.3d 897 (9th Cir. 2011). While Plaintiff points to an evaluation performed prior to Mr. Gonzalez' transfer to PVSP containing reports of suicide attempts in 2012 and 2014, these reports fail to establish that Mr. Gonzalez demonstrated a heightened risk of suicide or suicide attempts at the time he was housed in the short-term restricted housing unit in January of 2016. Likewise, despite inquiring about psychiatric medications and reporting increased depression while he was housed in the short-term

9

restricted housing unit, Mr. Gonzalez stated he would be fine without psychiatric medications and even reported feeling better without them, agreed to meet out of cell on a future date to discuss medication options, and further appeared stable during visits with CDCR mental health staff. The evidence Plaintiff cites, at most, indicates a generalized risk of suicide rather than the heightened risk required to establish deliberate indifference.

Even if Plaintiff were able to demonstrate a heightened risk of suicide at the time Mr. Gonzalez was housed in the short-term restricted housing unit, there is no evidence that Warden Frauenheim acted with deliberate indifference to any such risk. Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on *respondeat superior* or vicarious liability. *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *accord Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa County*, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley*, 734 F.3d at 977 (internal quotation marks omitted); *accord Lemire*, 726 F.3d at 1074–75; *Lacey*, 693 F.3d at 915–16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

In this instance, it is undisputed that Defendant Frauenheim had no personal involvement in the alleged constitutional deprivations. The undisputed facts demonstrate that Warden Frauenheim was not aware of any risk of harm to Mr. Gonzalez' health or safety and thus could not have acted with deliberate indifference to such harm. The only evidence concerning Warden Frauenheim's direct involvement in the purported constitutional deprivation is that Warden Frauenheim chaired a classification committee on January 14, 2016, which included CDCR psychologists Drs. Lee and Dehnavifar, both of whom evaluated Mr. Gonzalez' mental health and determined that retaining him in the short-term restricted housing unit did not place him at substantial risk of serious harm. (SUF No. 6.) Based on these evaluations and opinions, the committee voted to retain Mr. Gonzalez in the short-term restricted

housing unit. (SUF No. 7.) Without evidence that Warden Frauenheim was personally aware of any risk to Mr. Gonzalez and purposefully failed to respond, Warden Frauenheim cannot be held liable for an Eighth Amendment violation solely for relying on the opinions of the two medical professionals who evaluated Mr. Gonzalez. *See Peralta v. Dillard,* 744 F.3d 1076, 1087-88 (9th Cir. 2014). Plaintiff does not present any evidence to raise a genuine dispute of material fact that Defendant Frauenheim knew of or acted with deliberate indifference to any substantial risk of harm to Mr. Gonzalez. While Plaintiff argues that other CDCR employees knew of and displayed deliberate indifference to Mr. Gonzalez' serious medical needs, there is no respondeat superior liability under section 1983 and no basis to hold Warden Frauenheim liable without evidence that he personally participated in the deprivation of Plaintiff's rights.

Plaintiff further contends that Warden Frauenheim is subject to supervisor liability for his failure to require compliance with the *Coleman* order. (Doc. No. 36 at 10-11.) However, rather than citing to any evidence that Warden Frauenheim did not require compliance with *Coleman,* Plaintiff argues that "[a] trier of fact could reasonably conclude that Warden Frauenheim's participation as chair of the January 14, 2016 classification committee . . . was a sufficient causal connection to the constitutional violation." (*Id.* at 11.) This is an argument regarding Warden Frauenheim's direct liability, not his supervisory liability.

Moreover, the undisputed evidence establishes that Warden Frauenheim, in fact, implemented the *Coleman* order and developed policies for mentally ill inmates housed in the short-term restricted housing unit at PVSP. (SUF Nos. 2, 3.) Plaintiff has not cited to any evidence that the *Coleman* order was not implemented or that Warden Frauenheim implemented any other policy that amounted to a violation of Mr. Gonzalez' Eighth Amendment rights. Plaintiff only generally cites to the entirety of Mr. Gonzalez' 325 pages of medical records in support of her assertion that the *Coleman* order was not implemented. But Plaintiff's medical records do not have any bearing on Plaintiff's assertions that Warden Frauenheim implemented constitutionally deficient policies. Further, the Court is not required to "examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen,* 237 F.3d at 1031. Warden Frauenheim is therefore entitled to summary judgment on Plaintiff's

Eighth Amendment deliberate indifference claim.

### 2. Fourteenth Amendment—Substantive Due Process

Plaintiff additionally asserts a Section 1983 claim against Warden Frauenheim for violation of Mr. Gonzalez' substantive due process rights under the Fourteenth Amendment. (Doc. No. 11 at ¶¶ 58-66.) For a substantive due process violation, the conduct at issue must be arbitrary, or shock the conscience and violate the decencies of civilized conduct. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998). In her opposition, Plaintiff argues that "Warden Frauenheim was aware of Mr. Gonzalez' depression and prior suicide attempts" at the time of Mr. Gonzalez' death and failed to require compliance with the *Coleman* order's requirements. (*Id.* at 11-12.) However, Plaintiff does not cite to any evidence in support of these assertions. (*Id.*) *See Carmen,* 237 F.3d at 1031. As Plaintiff concedes, Warden Frauenheim relied on the opinions of two medical professionals who had evaluated Mr. Gonzalez in determining that placement in the short-term restricted housing unit was proper. (SUF Nos. 6, 7.) *See Peralta,* 744 F.3d at 1087-88. Plaintiff has not produced any evidence establishing that Warden Frauenheim failed to implement *Coleman,* improperly relied on the opinions of medical professionals, or otherwise engaged in any conduct which "shock[s] the conscience" as required for a violation of substantive due process rights under the Fourteenth Amendment. Thus, Warden Frauenheim is entitled to summary judgment on Plaintiff's Fourteenth Amendment substantive due process claim.

### 3. Qualified Immunity

Warden Frauenheim additionally contends that he is entitled to qualified immunity on Plaintiff's claims. (Doc. No. 35-1 at 11-12.) Qualified immunity protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When considering an assertion of qualified immunity, the court makes a two-pronged inquiry: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such right was clearly established at the time of defendant's alleged misconduct. *See Pearson v. Callahan,* 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz,* 535 U.S. 94, 201 (2001)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (quoting *al-Kidd*, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." *Estate of Ford*, 301 F.3d 1043, 1050 (9th Cir. 2002) (citation and internal marks omitted). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *C.B. v. City of Sonora*, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing *al-Kidd*, 563 U.S. at 740). An official's subjective beliefs are irrelevant. *Inouye*, 504 F.3d at 712.

Even if Plaintiff had identified a triable issue of material fact regarding a violation of a constitutional right, the applicable law was not clearly established at the time of the conduct at issue in this case. Writing approximately six months before Mr. Gonzalez' death, the Supreme Court stated in *Taylor v. Barkes,* 135 S. Ct. 2042, 2044 (2015) that "[n]o decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols." Plaintiff distinguishes *Taylor* as the suicide at issue in that case took place "nearly two years after the *Coleman* requirements were approved by the Court." (Doc. No. 36 at 14.) Instead, Plaintiff contends that *Coleman* created clearly established rights at the time of Mr. Gonzalez' death. (*Id.*) However, the Supreme Court in *Taylor* clarified that district court rulings do not equate to clearly established rights for the purposes of qualified immunity. *Taylor,* 135 S.Ct. 2042; *Gonzalez v. Adams*, 2016 WL 235136, at *6 (E.D. Cal. Jan. 20, 2016). Thus, it cannot be said that *Coleman* placed mentally ill inmates' general right to suicide

prevention protocols "beyond debate." *C.B.*, 769 F.3d at 1026. Additionally, for purposes of qualified immunity, clearly established law is not to be defined "at a high level of generality." *al-Kidd*, 563 U.S. at 742. Instead, the question is whether "the violative nature of particular conduct is clearly established." *Ibid*. *Coleman* does not stand for the broad proposition that there was a clearly established right to prevention of suicides of inmates known to be suicidal at the time of Mr. Gonzalez' death. Instead, *Coleman*'s holding was narrower, *i.e.* that "placement of seriously mentally ill inmates in the harsh, restrictive and non-therapeutic conditions of California's administrative segregation units for non-disciplinary reasons for more than a minimal period necessary to effect transfer to protective housing or a housing assignment violates the Eighth Amendment." *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1099 (E.D. Cal. 2014).

Although a Ninth Circuit precedent is "sufficient to clearly establish the law within [the Ninth Circuit]," *Perez v. City of Roseville*, 882 F.3d 843, 857 (9th Cir. 2018), "the sparse case law in this circuit on correctional officers' obligation to prevent the suicides of inmates they know to be suicidal" does not indicate that Warden Frauenheim violated a right of Mr. Gonzalez' that was so well established that all reasonable officers would understand that right was violated by their conduct. *M.B. by & Through Beverly v. California*, 2019 WL 498994, at *4–6 (E.D. Cal. Feb. 8, 2019) (citing *Horton by Horton v. City of Santa Maria*, 2019 WL 405559 (9th Cir. Feb. 1, 2019); *Clouthier v. County of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010), overruled by *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016); *Conn*, 591 F.3d 1081.) Even in those cases where an obligation to prevent an inmate's suicide has been recognized in the Ninth Circuit, there was an imminent, rather than sporadic suicide risk that was ignored by defendant officers who were aware of that looming risk. *Id.* (citing *Clouthier,* 591 F.3d1232; *Conn,* 591 F.3d 1081). In contrast, the evidence in this case does not suggest that Mr. Gonzalez suicide risk near the time of his death was especially imminent or acute. For example, the only evidence of prior suicide attempts occurred in 2012 and 2014, which occurred while Mr. Gonzalez was not in the custody of CDCR and were temporally remote from Mr. Gonzalez' January 2016 suicide. Thus, the Court concludes that, at the time of Mr. Gonzalez' death, "there was no case law clearly establishing that, absent some moment of punctuated crisis, officers have an obligation to implement particular suicide-prevention protocols." *M.B.,* 2019 WL 498994, at *4–6. As each of Plaintiff's claims

against Warden Frauenheim are premised on the same failure to prevent Mr. Gonzalez' suicide and there is no evidence of any imminent risk, Warden Frauenheim is entitled to qualified immunity on all of Plaintiff's claims against him.

### C. State Law Claim Against CDCR

Plaintiff further asserts a wrongful death claim against CDCR for failure to summon medical care in violation of California Government Code section 845.6. (Doc. No. 11 at ¶¶ 67-79.) Under California law, a public entity or its employee is not liable for injury caused by the employee's failure to furnish or obtain medical care for a prisoner. Cal. Gov't Code § 845.6. However, the public entity and its employee may be held liable if the employee is acting within the scope of his employment and either knows or has reason to know that the prisoner needs immediate medical care and fails to take reasonable action to summon such care. *Id.* "[S]ection 845.6 creates out of the general immunity a limited cause of action against a public entity for its employees' failure to *summon* immediate medical care only.... The statute does not create liability of the public entity for malpractice in furnishing or obtaining that medical care." *Castaneda v. Dep't of Corrs. & Rehab.,* 212 Cal.App.4th 1051, 1070 (2013) (emphasis in original); *Frary v. Cty. of Marin*, 81 F. Supp. 3d 811, 842 (N.D. Cal. 2015).

In her complaint, Plaintiff premises CDCR's liability on a CDCR employee who allegedly observed Mr. Gonzalez braiding a sheet in his cell. (Doc. No. 11 at ¶¶ 67-79.) CDCR contends that Plaintiff cannot produce evidence that this event occurred. (Doc. No. 35-1 at 12-13.) Plaintiff counters in her opposition that CDCR employees were aware of Mr. Gonzalez' mental illness, depression, and suicidal history due to Mr. Gonzalez' reports of increased depression and inquiries regarding psychiatric medication while housed at the short-term restricted housing unit at PVSP. (Doc. No. 36 at 15.) CDCR employees then failed to summon medical care for Mr. Gonzalez and failed to make their daily rounds to check on his condition. (*Id.* at 15-16.) On reply, CDCR notes that this claim is "entirely different from the claim asserted in [Plaintiff's] complaint" and the evidence nonetheless does not support Plaintiff's theories. (Doc. No. 43 at 10-11.)

The Court agrees. Plaintiff has not produced any evidence regarding the allegation that a CDCR employee saw Mr. Gonzalez braiding his sheet shortly before hanging himself as alleged in her operative complaint. Notwithstanding the fact that the theories identified in Plaintiff's opposition differ from

those pled in her complaint, there is likewise no evidence to support them. When Mr. Gonzalez inquired about psychiatric medications to CDCR psychologist Dr. Lee on January 26, 2019, he agreed to meet out of cell to discuss medication options the following week and denied any other significant mental health concerns or symptoms. Dr. Lee's notes further indicate that Mr. Gonzalez was not exhibiting any signs of thoughts or behaviors related to harming himself or others at that time. Moreover, Plaintiff's theories concern the manner in which care was provided and not a failure to summon care. *Castaneda,* 212 Cal.App.4th at 1070 ('California courts hold the failure . . . to monitor the progress of an inmate that the public employee has been summoned to assist, are issues relating to the manner in which medical care is *provided,* and do not subject the State to liability under section 845.6 for failure to *summon*.") (emphasis in original)). There is nothing in the evidence Plaintiff cites in her opposition establishing that Mr. Gonzalez needed immediate medical care on January 26, 2016, or that Dr. Lee or any other CDCR employee was aware of such a need and failed to take reasonable steps to summon medical care for Mr. Gonzalez. *See* Cal. Gov't Code § 845.6. Accordingly, the CDCR is entitled to summary judgment in its favor.

**D.     Doe Defendants**

Having granted summary judgment in favor of CDCR and Warden Frauenheim, the only defendants remaining are Does 1–50. (*See* Doc. No. 11.) As a general rule, the use of Doe defendants to identify a defendant is not favored. *Gillespie v. Civiletti,* 629 F.2d 637, 642–43 (9th Cir.1980). The Court further has the authority to dismiss the Doe defendants *sua sponte*. *See Craig v. United States,* 413 F.2d 854 (9th Cir.), *cert. denied,* 396 U.S. 987 (1969); *Urias v. Quiroz*, 895 F. Supp. 262, 264 (S.D. Cal. 1995). Here, Plaintiffs never amended the complaint to name Doe Defendants and never served any of the Doe defendants. The deadline for amendment of pleadings expired on February 2, 2018. (Doc. No. 30.) The Court accordingly finds that *sua sponte* dismissal of Does 1-50 is appropriate.

**V.     DISCUSSION**

For the reasons set forth above, it is HEREBY ORDERED:

1.     Defendants' motion for summary judgment filed March 1, 2019, (Doc. No. 35) is GRANTED;

2.     The Court dismisses Does 1-50, *sua sponte*; and

3. The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff, and close this case.

IT IS SO ORDERED.

Dated: **July 1, 2019**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE